## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DERRICK DIRTON | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-16-1477 |
| BRUCE A. LILLER, *et al.* | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM

The above-entitled civil rights complaint filed by Plaintiff Derrick Dirton concerns allegations that Dirton has been denied needed psychological services and medical care and that he has been subjected to excessive uses of force by unnamed correctional officers at North Branch Correctional Institution (NBCI) where he is incarcerated. ECF 1 and 8. Defendants filed a Motion to Dismiss or for Summary Judgment[1] in response to the complaint. ECF 26. Dirton was advised of his right to file an Opposition Response and of the consequences of failing to do so, but he has filed nothing further in this case. ECF 37. For the reasons that follow, Defendants' motion shall be construed as a Motion to Dismiss and shall be granted.

### Complaint[2] Allegations

Dirton alleges that he suffers from severe mental health issues as well as a seizure disorder which causes him to suffer grand mal seizures, facial weakness, and right-sided motor weakness. ECF 1 at p. 2.   He claims his mental health issues cause him to experience "psychotic misbehavior episodes" and, for that reason, he was transferred to Patuxent Institution

---

[1]       Also pending is Defendants' Motion for Extension of Time (ECF 30) which shall be granted.

[2]       Dirton filed a supplemental complaint (ECF 8) which does not appear to add any new claims to those raised in the original complaint.  Thus, only the original complaint and the amended complaint (ECF 14) will be referenced herein.

in 2014 for purposes of receiving treatment. *Id.* He states that On December 21, 2015, he was "abrubtly and without warning or reason" transferred to NBCI from Patuxent despite his continued need for the services offered at Patuxent. *Id.* Dirton claims that on January 8, 2016, he was told by Psychology Associate Lauren A. Beitzel and Sgt. Janet Puffenbarger that he was transferred back to NBCI because of behavioral problems at Patuxent. *Id.*

Dirton asserts that since his transfer to NBCI he has relapsed and has been subjected to "a perpetual pattern of abuse" and retaliatory misconduct. *Id.* He claims the abuse and retaliation includes withholding of his meals, stolen property, refusal of medication, falsified charges of rule violations, and denial of psychiatric treatment. *Id.* Dirton asserts he has filed "several complaints and letters" regarding these allegations but "several of his complaints" were stolen, never returned, or dismissed. *Id.*

On January 11, 2016, Dirton filed a "complaint" after seeking help from Bruce Liller and Laura Booth-Moulden.[3] ECF 1 at p. 3.  On January 20, 2016, Dirton states he filed "another appeal" regarding his administrative remedy procedure complaint ("ARP") designated "ARP NBCI-0100-16." *Id.* He claims he never received a response to the appeal. The ARP concerns Dirton's transfer from Patuxent to NBCI and alleges that Dirton is being denied access to psychiatric services in violation of the Americans with Disabilities Act and the Rehabilitation Act. ECF 1-2 at pp. 19 – 21. The ARP was dismissed for procedural reasons with the notation that case management decisions are not subject to the ARP process. *Id.* at p. 19. In the appeal to the Commissioner, Dirton asserted that the procedural dismissal was erroneous because case management has nothing to do with delivery of psychiatric services. ECF 1-2 at pp. 22- 23. Dirton never received a response  from the Commissioner of Correction. ECF 1 at p. 3.

---

[3]     Dirton's claims were prepared for him by two other inmates, Walter Hall and John Wagner. ECF 1 at p. 3.

Dirton claims he filed complaints with Defendant Holwager who is the "clinical director." ECF 1 at p. 3. Dirton claims he has been subjected to biased and prejudicial treatment at NBCI due to the multiple grievances as well as civil litigation he has filed. *Id.* Dirton references ARP NBCI-1391-14 with regard to Holwager. ECF 1-2 at pp. 8 – 11. In that ARP, Dirton claims he is on a hunger strike and has not been seen by either Holwager or Social Worker Wilson. *Id.* Dirton stated that he had "been going threw (sic) mental health things" during his hunger strike, but was not provided with mental health services. *Id.* at p. 9. He further claimed that Holwager and Wilson allowed custody staff "to control inmates" and that he had a mental break down due to the oppression he was subjected to. *Id.* Dirton stated in the ARP that Holwager and Wilson refuse to report abuse by officers and that they are unfit to be mental health workers. *Id.* at p. 10. The ARP was dismissed as frivolous. *Id.* at p. 8. It was noted that while Dirton claimed he needed to be transferred to a qualified mental health facility, he was advised he would not be transferred unless case management determined it was necessary. *Id.*

Dirton asserts that he has attempted to receive proper psychological and medical care since 2014. ECF 1 at p. 3. A letter dated December 17, 2013, addressed to "Psychology Department Laura Booth" asserts that Dirton should be on medication for attention deficit disorder ("ADD") and states he also suffers from bipolar disorder, post-traumatic stress disorder ("PTSD"), and schizophrenia. ECF 1-2 at p. 1. The only claim raised in the one-page letter is that Dirton should be taking adderol for ADD, the remainder of the letter simply states what each disorder involves. *Id.*

Dirton claims, without describing specific instances, that he has been "beaten, mistreated, and falsely charged/convicted to punitive segregation out of malice retaliation." ECF 1 at p. 3.

He further states that Defendant Bishop "has adamantly refused to address his subordinates" including both security and psychology staff and claims he has been subjected to electric shock twenty times and that he has been maced. *Id.* Dirton adds that he has suffered multiple assaults and his family has made both the Commissioner of Correction and the Warden of NBCI aware of the "misfeasance of both psyche (sic) and custody staff" but the Commissioner and Warden have failed to take action to correct it. *Id.* at p. 4. Dirton further claims that the Governor of Maryland and his staff as well as the director of Patuxent and the Director of Treatment Services were also informed of the alleged abuse he has suffered. *Id.*

Dirton alleges that Captain Jason Harbaugh visited him while he was confined at Western Correctional Institution ("WCI") during a hunger strike he chose to engage in. ECF 1 at p. 4. He claims that Harbaugh harassed him and "offered innuendo" which harmed him psychologically because Harbaugh "participated in the death of prisoner Ifeanyi A. Iko." *Id.*

Dirton alleges that the hunger strike he began on January 6, 2016, was in response to being denied his medication and mental health treatment. He claims the objective of the hunger strike was to obtain the treatment he needed, but instead he was subjected to further physical and psychological abuse leading to a suicide attempt. ECF 1 at p. 4.

Dirton asserts he "has the mental capacity of a child" because of his brain injury and multiple diagnoses of mental illness. He asserts that his diminished abilities should excuse him from exhausting administrative remedies with regard to his claims, especially in light of the manner in which his claims are continuously dismissed. ECF 1 at pp. 4 – 5.

In an "Amended Complaint," Dirton asserts that correctional staff are retaliating against him for this lawsuit, but does not provide a narrative explaining how the officers are engaging in

retaliation.[4]  ECF 14.  The Amended Complaint is supported by a Declaration under Oath from

another inmate, Michael Jones.  ECF 14-1.  Jones avers that April 28, 2016,  Dirton provided

legal mail, along with paperwork authorizing expenditure of funds in his account to cover the

cost of certified mail, to Sgt. Charles Bielanskie.  *Id.* at p. 1.  The following day, Dirton's mail

was returned to him with a notation that Dirton was sending it out as an indigent inmate when in

fact Dirton had provided a means to pay for the fees.  *Id.* at p. 2.   The mail was given to

Bielanske again on May 6, 2016, and Dirton received the expenditure receipt back approximately

21 days later indicating his mail had been sent out as requested.  *Id.*  Jones further avers that he

assists Dirton when he can because of his "mental incompetency."  *Id.* at p. 3.

Standard of Review

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the

sufficiency of the Plaintiff's complaint.  *See Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir.

1999).  The Supreme Court articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain
> statement of the claim showing that the pleader is entitled to relief," in order to
> "give the defendant fair notice of what the . . . claim is and the grounds upon
> which it rests."  *Conley v. Gibson,* 355 U.S. 41, 47 (1957) (*abrogated on other
> grounds*).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of
> Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's
> obligation to provide the  "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic recitation of the elements of
> a cause of action will not do, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986)
> (on a motion to dismiss, courts "are not bound to accept as true a legal
> conclusion couched as a factual allegation").   Factual allegations must be
> enough to raise a right to relief above the speculative level, see 5 C. Wright &
> A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)
> (hereinafter Wright & Miller) ("[T]he pleading must contain something more .

---

[4]      Ordinarily, the legal effect of filing an Amended Complaint is to supersede the original complaint and
abandon those claims not raised in the amended complaint.  *See* Fed. R. of Civ. Proc. 15.  The pleading docketed as
an Amended Complaint, however, is not labeled as such and is clearly an attempt to simply add the claim asserted to
those already raised in the original complaint.  Thus, the claim raised in the Amended Complaint shall be considered
as a claim in addition to those raised in prior pleadings.

.. than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.   In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986).   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.   Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).   The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted).   Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

Analysis

The Defendants named in the Complaint, Bruce Liller, Laura Booth-Moulden, Warden Frank Bishop, and Dr. James K. Holwager, assert the claims against them are subject to dismissal for failure to state a claim upon which relief may be granted. ECF 36-1 at p. 5. This Court agrees.

First, the Complaint explicitly sues Liller, Holwager, and Booth-Moulden in their official capacities. Under Eleventh Amendment jurisprudence, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Therefore, official capacity claims are subject to sovereign immunity under the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *accord Hafer v. Melo*, 502 U.S. 21, 25 (1991). As the Supreme Court explained in *Graham*, 473 U.S. at 165: "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)) (citations omitted); *see also*, *e.g.*, *Huggins v. Prince George's Cnty.*, 683 F.3d 525, 532 (4th Cir. 2012) (treating suit against individuals in official capacity as suit against county). Therefore, states and their officers, sued in their official capacities, are not "persons" subject to suit for money damages under 42 U.S.C. § 1983. *Will*, 491 U.S. at 71.

Even if the claims against Liller, Booth-Moulden, and Holwager were considered as personal capacity claims, the claims are still subject to dismissal. The claims are generalized ones that do not give rise to a suspicion that these Defendants deliberately denied Dirton mental health care that was necessary to treat a serious mental illness. The Eighth Amendment prohibits

8

"unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999). There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). A prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.*

Dirton's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable.*" *Id.* at 47-48. Construing the claims raised in a light most favorable to Dirton, the complaint fails to allege anything more than Dirton's disagreement with his removal from the programs at Patuxent and his dissatisfaction with the services provided at NBCI. His only "proof" of deleterious effect on his mental health is his choice to engage in a hunger strike which he admits effected his mental status. His choice to engage in such self-

injurious behavior is not a basis for finding these Defendants liable for an Eighth Amendment claim of deliberate indifference to a serious mental health need.

With respect to Warden Bishop, the claim against him appears to be based on Dirton's conclusory allegation that he knew about his claims against various staff members but failed to do anything about it. Such a claim is one that relies upon the doctrine of *respondeat superior*. It is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Supervisory liability under §1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Where, as here, a plaintiff points to no action or inaction on the part of supervisory defendants that resulted in a constitutional injury, the claims against supervisory personnel must be dismissed.

Dirton's claims of retaliation against other unserved Defendants also fail and must be dismissed. In order to prevail on a claim of retaliation, Plaintiff "must allege either that the

retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).    "A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) *(judgment vacated on other grounds*, 525 U.S. 802 (1998) (conclusory allegations of retaliation insufficient to state claim). Dirton's claims of retaliation are conclusory and without merit.    Dismissal of ARP complaints and isolated delays in processing outgoing legal mail are simply not enough alone to establish a claim of retaliation. Dirton fails to include any allegation that connects the adverse actions, to the extent they can be considered adverse, to an attempt to retaliate against him for a constitutionally protected activity. With respect to the alleged false disciplinary charges, Dirton includes no specific facts making it impossible for these Defendants to even address the claim. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72,74 (4th Cir. 1994)).

The Complaint must be dismissed. Where, as here, a prisoner complaint is dismissed for failure to state a claim upon which relief may be granted, a "strike" is issued under 28 U.S.C. §1915(g). In addition, Dirton is reminded that under 28 U.S.C. §1915(g) he will not be granted *in forma pauperis* status if he has "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be

granted, unless the prisoner is under imminent danger of serious physical injury."   The

Complaint shall be dismissed by separate Order which follows.


_____MARCH 7, 2017_____                    _____Rll D. Bath_____
Date                                                        RICHARD D. BENNETT
                                                            UNITED STATES DISTRICT JUDGE